SOUTH TEXAS TELEPHONE CO. et al. v.
HUNTINGTON et al.

(Supreme Court of Texas.     May 3, 1911.)

1. CONTRACTS (§ 226*) — CONDITION SUBSE-
QUENT—FORFEITURE.

To constitute a condition subsequent on
which a forfeiture may be declared because of a
failure of its performance, the language must be
clear and the condition must be created by ex-
press terms or by clear implication, and, where
there is a doubt as to the meaning of the lan-
guage of an instrument, it will be construed to
be a covenant only.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1033–1037; Dec. Dig. § ·226.*]

2. CORPORATIONS (§ 573*)—REORGANIZATION
AGREEMENTS—CONSTRUCTION.

A holder of a judgment against a corpora-
tion for $35,000, constituting a lien on its prop-
erty, agreed with trustees holding the property
to reorganize the corporation, that he should
receive the amount of his judgment in the bonds
of the reorganized corporation, "it being under-
stood as part of said agreement that the total
issue of bonds * * * shall not exceed $150,-
000 of which at least $50,000 in cash is to be
put in extensions or additions to the property."
Held, that the provision for the investment of
$50,000 was not a condition subsequent, but
was a mere covenant, for the breach of which
the only remedy was an action for damages.

[Ed. Note.—For other cases, see Corporations,
Dec. Dig. § 573.*]

3. CORPORATIONS (§ 573*)—REORGANIZATION
AGREEMENTS—ACTIONS FOR BREACH—DAM-
AGES.

A holder of a judgment against a telephone
corporation constituting a lien on its property
agreed with trustees holding the property that
the corporation should be reorganized, and that
he should receive the amount of his judgment in
bonds of the reorganized corporation, and that
the bonds of the reorganized corporation should
not exceed $150,000, of which at least $50,000
in cash should be put in extensions or additions
to the property. The reorganized corporation
could not comply with its promise to invest $50,-
000 without sacrificing the interest of the cor-
poration in the sale of the bonds. The agree-
ment to invest the $50,000 designated no ex-
tensions nor betterments. Held, that the reor-
ganized corporation was not liable in damages
for its failure to comply with its promise.

[Ed. Note.—For other cases, see Corporations,
Dec. Dig. § 573.*]

Error from Court of Civil Appeals of Third
Supreme Judicial District.

Action by H. F. Huntington and others
against the South Texas Telephone Company
and others. There was a judgment of the
Court of Civil Appeals (121 S. W. 242) affirm-
ing a judgment for plaintiffs, and defendants
bring error. Reversed and rendered.

Sleeper, Boynton & Kendall, Cochran &
White, and Fiset & McClendon, for plaintiffs
in error. Allen & Hart, for defendants in
error.

BROWN, C. J. In the year 1905 in the dis-
trict court of Travis county, Tex., H. F.
Huntington recovered a judgment against the
Commercial Telephone Company, which es-

tablished a lien in favor of Huntington up-
on all the property of the said Commercial
Telephone Company to the amount of $35,-
000; that on August 1, 1905, under the order
of the said court, all of the said property
was sold to J. H. Goeke and F. Bimel, as
trustees, to hold for the benefit of a corpora-
tion thereafter to be organized, which sale
was confirmed by the said district court on
August 10, 1905, and the property duly con-
veyed to the trustees. Huntington and the
said trustees made an agreement whereby the
former agreed to accept $35,000 par value of
the bonds of the company, which was to be
organized, to take over the said property,
said bonds to be secured by a first mortgage
on the property and which was to be in full
payment of the lien of said Huntington
under the judgment against the Commercial
Telephone Company. F. C. Smith was inter-
ested with Huntington in the $35,000 claim
against the corporation.

The trustees proceeded to organize the
South Texas Telephone Company and pro-
cured a charter therefor. It had been agreed
and made a part of the decree rendered that
the new company should issue bonds when
organized not to exceed $150,000, $35,000 of
the bonds to be delivered to Huntington as
before stated, and that $50,000 out of the
proceeds of the remaining $115,000 should be
converted into cash and put into extensions
or additions to the property. The $50,000 in
cash was not invested as agreed upon, but
the remaining $115,000 of bonds were unsold.
Huntington charged that the investment of
$50,000 in cash in the betterment of said
property was a condition upon which he
made the claim to accept the $35,000 of
bonds in settlement of his claim, and that
the company had failed to make said invest-
ment, whereby the value of the bonds that
he held had been greatly reduced, to his
damage. It was alleged that he feared that
the officers of said telephone company would
dispose of the bonds in such way as to pre-
vent the indorsement of his rights, and·
prayed for an injunction to restrain the pres-
ident of the corporation and other officers
from making any sale thereof. In so far as
it may be material, the terms of these agree-
ments and orders will be referred to in the
discussion of the question presented herein.
Upon the trial the court submitted to the
jury the following special issues:

"(1) Based upon all the facts and circum-
stances in evidence in this case, has the de-
fendant, the South Texas Telephone Com-
pany, had a reasonable time from the 9th
of September, A. D. 1905, to have issued and
disposed of the $115,000 of its bonds for a
reasonable amount?

"(2) Did the defendant South Texas Tele-
phone Company, through its duly authorized
officers, make a reasonable and proper effort

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

to dispose of the $115,000 of its bonds for a reasonable amount?

"(3) If you find from a preponderance of the evidence in this case that the defendant the South Texas Telephone Company did not dispose of said $115,000 of bonds within a reasonable time, and has made no reasonable or proper effort to dispose of the bonds for a reasonable amount, then state what would have been the value of the $35,000 of bonds belonging to the plaintiffs, had the said defendants' duly authorized officers disposed of said bonds and used $50,000 of the proceeds of the sale, of said bonds in extensions and additions to the property of the defendant the South Texas Telephone Company?

"(4) Since the organization of the South Texas Telephone Company do you find from the evidence that there has been a time when said $115,000 in bonds of said company could not have been sold at par?

"(5) As shown by the facts, do you find that there had been an opportunity since the organization of the defendant company and the authorization of the bond issue when said bonds could have been sold for a price sufficient to net the company $50,000 over and above the amount of the advancement made by and the amount due the bondholders' committee and assumed by the company?

"(6) Since the organization of the defendant South Texas Telephone Company has there been a time when said $115,000 in bonds in said company could have been sold at a reasonable price? To which issues the jury returned the following answers, to wit: To question No. 1: 'Yes.' To question No. 2: 'No.' To question No. 3: '$46,666.66.' To question No. 4: 'No.' To question No. 5: 'No.' To question No. 6: 'No.'"

The defendants moved the court to enter judgment in their favor upon the verdict, which the court refused to do, and entered judgment for the plaintiff against the telephone company for $46,666.66, also rescinding the contract, damages for the breach of which were sued for, canceling the bonds of Huntington and decreeing a lien in favor of the plaintiffs to secure the amount of said judgment upon the property known as the Lone Star property, and declaring said lien to be superior to all rights, claims, and liens of any parties to said suit, and further providing that no execution issue on said judgment until the Huntington bonds be deposited in court to the order of the defendant company. The remittitur for $3,500 was entered and judgment was entered for the balance.

By the majority of the court the judgment of the district court was affirmed (121 S. W. 242), but Chief Justice Key dissented from that decision and filed an opinion in opposition thereto, in which he takes issue with the majority in holding that Huntington was entitled to a rescission of his contract and agreements by which he accepted the $35,-

000 in bonds, holding that the agreement was not entered into upon the condition that the $50,000 in cash should be invested in improvements of the property of said company.

[1] To constitute a condition subsequent upon which a forfeiture may be declared because of a failure of its performance, the language must be clear, and the condition must be created by express terms, or by clear implication, and it must be strictly construed. Southard v. New Jersey C. R. Co., 26 N. J. Law, 13–20. If there be doubt as to the meaning of the language used in this instrument, then it must be construed to be a covenant, for the law will not permit a liberal construction to be placed upon its terms in order to cause the forfeiture of a right secured by the instrument. Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 Atl. 4, 1 L. R. A. 380; Railway Co. v. Titterington, 84 Tex. 222, 19 S. W. 472, 31 Am. St. Rep. 39.

[2] The language upon which the claim of forfeiture is based in this case reads: "It being understood as part of said agreement that the total issue of bonds of the reorganized company shall not exceed $150,000.00, of which at least $50,000.00 in cash is to be put into extensions or additions to the property." It will be difficult to deduce from this language by the most liberal construction a conclusion that there was in the minds of the parties at the time the intention that a failure to make the investment of $50,000, as provided for, should work a forfeiture of all the terms of that agreement or contract. But, when we apply to it the well-established and just rules of construction that such condition must be either expressed or clearly implied, we see no ground whatever for the conclusion that this provision of investment for the $50,000 was to serve as a condition subsequent to the executed contract made by Huntington, and therefore we must reach the conclusion that the trustees, as a consideration for Huntington's acceptance of the $35,-000, entered into a covenant with him that the telephone company should in the future sell the $115,000 in bonds and should invest $50,000 of the proceeds thereof in extensions and additions to the property. The breach of the covenant did not give a right to an action for rescission of the executed contract, but the remedy which the law gives to the parties under such circumstances is an action for damages. 6 Pomeroy's Equity Jurisprudence, § 686; Railway Co. v. Titterington, 84 Tex. 222, 19 S. W. 472, 31 Am. St. Rep. 39; Moore v. Cross, 87 Tex. 557, 29 S. W. 1051. In different language we express the views of Chief Justice Key of the Court of Civil Appeals, in which we concur. It follows that the judgments of the District Court and of the Court of Civil Appeals, by which the transaction between Huntington and the trustees for the new corporation was rescinded, must be reversed, and the question arises, Shall we remand the case to the Dis-

trict Court for another trial, or shall we render judgment here in favor of the plaintiffs in error?

[3] The trial court submitted to the jury special issues upon which they returned their answers, and judgment was entered for the plaintiffs. Among other questions were the following:

"(4) Since the organization of the South Texas Telephone Company do you find from the evidence that there has been a time when the said $115,000 in bonds of said company could have been sold at par?" To which the jury answered, "No."

"(5) As shown by the facts, do you find that there has been an opportunity since the organization of the defendant company and the authorization of the bond issue when said bonds could have been sold for a price sufficient to net the company $50,000 over and above the amount of the advancements made by and the amount due the bondholder's committee and assumed by the company?" To which the jury answered, "No."

"(6) Since the organization of the defendant South Texas Telephone Company has there been a time when said $115,000 in bonds of said company could have been sold at a reasonable price?" To which the jury answered, "No."

These findings of the jury show very clearly that under the evidence submitted to them their findings indicate that the company had not in any way made a willful default, and, in fact, it shows that the company could not have complied with its promise to make the investment of $50,000 without a sacrifice of the interest of the company in the sale of the bonds, and, indeed, a sacrifice of the property. Besides, the whole subject of damages which might arise out of this transaction with Huntington is so vague and indefinite that we are of opinion that the district court should have entered judgment for the defendants upon the verdict returned. The covenant to invest the $50,000 designates no extensions nor betterment to be made, and there is nothing in the contract by which it could be determined, hence no estimate of damages could be based upon a failure to do a thing that could not be ascertained. The finding of the jury of $46,666.66 damages for the failure to make the investment is palpably without any evidence to support it or any facts upon which to base a reasonable conclusion as to the effect of said failure upon the right of Huntington.

Under these conditions, we see no sound reason for returning this case to the trial court for further trial. It is therefore ordered that the judgments of the District Court and Court of Civil Appeals be reversed, and that judgment be here entered in favor of the defendants, the plaintiffs in error.